UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FORTRAN GROUP INTERNATIONAL,
INC.,

    Plaintiff,

v.                                            CASE NO. 8:10-cv-01602-EAK-TBM

TENET HOSPITALS LIMITED,
R.H.S.C. EL PASO, INC; and RICOH
AMERICAS CORPORATION d/b/a
RICOH USA,

    Defendants.
_____/

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant, Ricoh Americas Corporation's ("Ricoh"), Motion for Summary Judgment (Doc. 92), Plaintiff's response (Doc. 95), and Defendant Ricoh's reply (Doc. 115). For the reasons set forth below, Defendant Ricoh's Motion for Summary Judgment as to Counts III and IV of the Amended Complaint (Doc. 2) is **DENIED**. Plaintiff's Motion for Summary Judgment as to Counts III and IV of the Amended Complaint is also **DENIED**.

PROCEDURAL HISTORY

After removal to Federal Court, Plaintiff filed its Amended Complaint on July 21, 2010 against Tenet Hospitals Limited ("Tenet"), R.H.S.C. El Paso, Inc. (RHSC), and Ricoh for breach of Settlement Agreement, declaratory relief, breach of Confidentiality and Non-Circumvention

Agreement, and tortious interference (Doc. 2). These claims resulted from a lease agreement entered into by Tenet and RHSC for the lease of photocopiers from Plaintiff, which Ricoh manufactures. Relevant to this order are Counts III and IV of the Amended Complaint, which assert claims of breach of Confidentiality and Non-Circumvention Agreement and tortious interference against Ricoh.

On June 20, 2011, after multiple motions for extension of time and to modify (*See* Doc. 88, 90) the Court set the deadline for dispositive motions as July 1, 2011, and noted that no further continuances would be granted (Doc. 91). On July 1, 2011, Defendant Ricoh filed a Motion for Summary Judgment (Doc. 92). On July 29, 2011, Plaintiff filed a Response in Opposition to Defendant Ricoh's Motion for Summary Judgment (Doc. 95), as well as the Affidavit of Derrick Bavol in Opposition to Ricoh's Motion for Summary Judgment (Doc. 96) and the Depositions of Enrique Bernal and Kimberly Burdine (Doc. 97, 98). As part of Plaintiff's Response, it included an untitled cross-motion for summary judgment. Defendant Ricoh filed a Motion for Leave to Reply in Response to Plaintiff's Response in Opposition to Ricoh's Motion for Summary Judgment on August 10, 2011 (Doc. 99). Though this motion was originally denied (Doc. 100), the decision was vacated and the Motion for Leave was granted due to the untitled cross-motion for summary judgment included in Plaintiff's Response (Doc. 109). Defendant Ricoh filed its Reply in Response to Plaintiff's Response to Defendant's Motion for Summary Judgment on October 21, 2011 (Doc. 115), along with the Deposition of Derrick Bavol (Doc. 116).

Having before it Defendant Ricoh's Motion for Summary Judgment, Plaintiff's Response in Opposition to Defendant Ricoh's Motion for Summary Judgment, and Defendant Ricoh's Reply in Response to Plaintiff's Response in Opposition to Ricoh's Motion for Summary

Judgment, the Court may now decide Defendant's and Plaintiff's Motions for Summary Judgment.

## STATEMENT OF THE FACTS

The following facts are submitted by the parties in support and/or in opposition to their respective motions for summary judgment. The Court recognizes these as "facts" only in regard to resolution of the pending motion.

Plaintiff, Fortran Group International, Inc. ("Fortran"), is a corporation organized under Florida law with its principal place of business in Hillsborough County, Florida. Defendant Ricoh, a corporation organized under Delaware law, is registered as a foreign, for-profit corporation in the State of Florida, and regularly conducts business in Florida as well (Doc. 2). Plaintiff alleges an amount in controversy in excess of $75,000.00, and diversity jurisdiction is therefore proper pursuant to 18 U.S.C. § 1332.

Plaintiff is engaged in the business of financing and leasing copier equipment, and had entered into three Master Lease Agreements with Defendants Tenet and RHSC for the lease of a number of copiers in May 2004 (Doc. 2, Ex. B). As part of the Master Lease Agreements, Plaintiff was entitled to a right of first refusal, the opportunity to match or beat any competitor's offer to lease new equipment at the end of the lease term.

Defendant Ricoh was the manufacturer of the copiers that Plaintiff leased to Defendants Tenet and RHSC. On May 26, 2004, Plaintiff and Defendant Ricoh entered into a Confidentiality and Non-Circumvention Agreement ("Non-Circumvention Agreement") as a result of Plaintiff's Master Lease Agreements with Defendants Tenet and RHSC (Doc. 2, Ex. F). In pertinent part, Paragraph 2 of the Non-Circumvention Agreement provides that:

> Recipient shall not circumvent Fortran and make direct contact with Fortran's business contacts related to this opportunity. Any breach of this agreement may cause serious

harm or damage to Fortran, which may include, but is not limited to, out-of-pocket expenses as well as loss of future income.

On January 27, 2009, Kimberly Burdine on behalf of Ricoh initiated communication with Tenet regarding the Fortran leases (Doc. 98, P. 25, L. 17–25; Doc. 98, P. 26, L. 1–22). On February 2, 2009, Burdine made plans to meet with Tenet to assess its needs at the end of the Fortran lease and to provide a proposal to replace the Fortran leases (Doc. 98, P. 30, L. 16–25; Doc. 98, P. 31, L. 1–25; Doc. 98, P. 32, L. 1–11). Burdine provided Tenet with a form letter for Tenet to use in terminating its Master Lease Agreements with the Plaintiff, and offered to pay $165,000.00 to help Tenet terminate said agreements. (Doc. 98, Ex. 1; Doc. 97, Ex. 56).

On April 7, 2010, Plaintiff and Defendants Tenet and RHSC mutually terminated the Master Lease Agreements and agreed to enter into a Settlement Agreement (Doc. 2, Ex. 1). Ricoh has since entered into lease agreements with both Tenet and RHSC. As a result of Ricoh's actions, Plaintiff alleges that it has suffered damages of lost profits, loss of income, loss of business reputation, and future opportunities (Doc. 2, ¶ 62).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325. When the moving party has met this initial

burden, the nonmoving party must then designate specific facts showing that there exists some genuine issue of material fact in order to defeat summary judgment. *Id.* at 324. In ruling on state-law claims, such as the contract and tort claims at issue in the case at bar, the Court must follow state—that is, Florida—law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (citing *Balt. & Ohio R.R. Co. v. Baugh*, 149 U.S. 368, 401 (1893)).

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259–1260 (11th Cir. 2004). In determining whether a material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983) (stating that the Court's function is not to decide issues of fact, but rather to determine if issues of fact exist).

DISCUSSION

DEFENDANT RICOH AMERICAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

1. Count III: Breach of Contract

Plaintiff alleges that Defendant Ricoh breached the Non-Circumvention Agreement by making direct contract with Tenet (Doc. 2, ¶ 60). Defendant Ricoh essentially argues that there is

no issue of material fact as to the breach of contract claim since Fortran's relationship with Tenet and RHSC had terminated before Ricoh entered into subsequent lease agreements with Tenet and RHSC. Ricoh acknowledges that it expects "Fortran to argue that there are disputed issues of fact regarding contact between Tenet and Ricoh before the Settlement Agreement between Fortran and Tenet." (Doc. 92, P. 6) Ricoh concludes however that, "[s]uch argument would be unavailing, and would miss the point entirely . . . there could have been no claim for breach of the Non-Circumvention Agreement . . . unless and until Ricoh and Tenet entered into subsequent lease agreements." (Doc. 92, P. 6–7)

In Florida, the interpretation of a contract is generally a matter of law to be determined by the court. *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). That said, once the terms of a contract are settled, or if those terms are unambiguous to begin with, factual issues as to the parties' intent or what actually occurred between the parties cannot be decided on summary judgment and must be left to the factfinder. *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. 1st Dist. App. 1987). When terms of a contract are unambiguous, the court will "apply the facts of [the] case and determine if there are any disputed issues which would preclude granting the requested summary judgment." *McCluney v. Gen. Am. Life. Ins. Co.*, 1 F. Supp. 2d 1347, 1353 (M.D. Fla. 1998).

Here, the parties seem to be in agreement as to any terms of the contract that could be considered remotely ambiguous. Neither party disputes the meaning of the term "this opportunity" (Doc. 2, Ex. F). It is clear from the communications between the parties that the Non-Circumvention Agreement meant to refer to the Master Lease Agreements (Doc. 97, ¶ 9). Additionally, it is clear that the contract prohibits Ricoh from "mak[ing] direct contact with Fortran's business contacts" (Doc. 2, Ex. F). The terms of the contract being settled, the court

must apply the facts to determine if there are any disputed issues that would preclude summary judgment.

Plaintiff offers considerable evidence to the effect that Ricoh made direct contact with Tenet prior to the termination of the Master Lease Agreement. Specifically, Plaintiff offers evidence that Kimberly Burdine, on behalf of Ricoh, initiated contact with Tenet as early as January 27, 2009. While Defendant Ricoh believes that this evidence "misses the point entirely," this is simply not the case. Ricoh could have engaged in actions prior to the termination of the Master Lease Agreements that would have constituted a breach of the Non-Circumvention Agreement. The nature of the Non-Circumvention Agreement does not preclude a breach prior to Ricoh entering into the subsequent lease agreement with Tenet and RHSC. According to the contract, the simple act of making direct contact with Tenet and RHSC could constitute a breach. Since a reasonable jury could find that the direct contact with Tenet and RHSC occurred before the termination of the Master Lease Agreements and, thereby, constituted a breach of the Non-Circumvention Agreement to the detriment of Plaintiff, there exists a genuine issue of material fact and Defendant Ricoh is not entitled to summary judgment.

2. Count IV: Tortious Interference

Plaintiff alleges that Defendant Ricoh intentionally and unjustifiably interfered with its business relationship with Defendants Tenet and RHSC, causing them to breach their contractual relationship with Plaintiff, and resulting in damage to Plaintiff (Doc. 2, ¶ 67–69). Defendant Ricoh essentially argues that summary judgment is appropriate because it cannot be held liable for interfering with the relationship between Plaintiff and Defendants Tenet and RHSC since the relationship had been mutually terminated at the time Ricoh entered into a subsequent lease agreement with Tenet and RHSC.

The elements of tortious interference with a business relationship are "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)).

Defendant Ricoh is correct in its argument that it cannot be liable for tortious interference if the tortious conduct occurred after the termination of the Master Lease Agreements, since no business relationship would exist between Plaintiff and Defendants Tenet and RHSC, as required by the first element of a claim for tortious interference. However, Plaintiff has provided evidence of conduct that occurred before the termination of the Master Lease Agreements, when there certainly existed a business relationship between Plaintiff and Defendants Tenet and RHSC that Ricoh was aware of, that could be found to constitute intentional and unjustified interference. Beyond the direct contact that Ricoh initiated with Tenet, allegedly in breach of the Non-Circumvention Agreement, Plaintiff has also shown evidence that Ricoh provided Tenet with a form letter and monetary funds to assist it in terminating the Master Lease Agreements. A reasonable jury could find these actions on the part of Ricoh to constitute intentional and unjustified interference with the relationship between Plaintiff and Defendants Tenet and RHSC. Accordingly, there is an issue of material fact and Defendant Ricoh is not entitled to summary judgment.

Defendant Ricoh also argues that a claim for tortious interference is barred by Florida's Economic Loss Rule since both Plaintiff's claim for breach of contract and Plaintiff's claim for

tortious interference arise out of the same alleged conduct, and, therefore, should be resolved in contract law. This argument also fails.

According to Florida law, contract principles are more appropriate than tort principles to resolve purely economic claims. *Eye Care Intern, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1314 (M.D. Fla. 2000). Accordingly, courts apply the economic loss rule to prevent recovery in tort where the damages flow from a breach of contract, unless the tort is independent of the breach of contract claim. *Id.* Because the nature of tortious interference makes it an independent tort that requires proof of facts that are separate and distinct from a breach of contract claim, this court has held that tortious interference claims are permissible under an exception to the economic loss rule. *Gardner v. Construct Corps, LLC*, 2010 WL 427742 at *2 (M.D. Fla. 2010)

Since the claim for tortious interference requires proof of facts that are distinct from a breach of contract claim, and since Plaintiff has provided evidence of conduct on the part of Defendant Ricoh that goes beyond the mere breach of the Non-Circumvention Agreement and could be found by a reasonable jury to amount to intentional and unjustified interference, Plaintiff's claim for tortious interference is not barred by the Economic Loss Rule and Defendant Ricoh is not entitled to summary judgment.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On July 29, 2011, Plaintiff filed an untitled motion for summary judgment as part of its Response to Defendant Ricoh's Motion for Summary Judgment (Doc. 95). Prior to this filing, on June 20, 2011, the Court declared July 1, 2011 to be the deadline for dispositive motions and firmly stated that the Court "will not grant any further continuances" (Doc. 91). Plaintiff cannot evade the deadline established by the Court by filing an untitled dispositive motion as part of its Response.

It is well founded that the schedule is more than just a frivolous piece of paper that counsel can disregard whenever it suits him. *Payne v. Ryder Systems, Inc.*, 173 F.R.D. 537, 540 (M.D. Fla. 1997) (quoting *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987). Under Rule 16(b)(1) of the Federal Rules of Civil Procedure, the Court is directed, in consultation with the attorneys, to establish a schedule limiting the timeframe for amending pleadings. *Fed. R. Civ. P. 16(b)(1)*. The established schedule is binding on the parties and can only be modified by a "showing of good cause" that leave to amend is proper . *Fed. R. Civ. P. 16(b)(4)*. Accordingly, the Eleventh Circuit has consistently held that motions filed after the deadline established by the Court pursuant to Rule 16(b)(1) will be denied as untimely. *Payne*, 173 F.R.D. at 540.

This Court made clear that the deadline for dispositive motions was final and would not be further extended. Yet, Plaintiff's motion was filed twenty-eight (28) days after the deadline set by the Court. Plaintiff made no effort to establish good cause for the Court to amend the schedule, and, furthermore, sought to file its late motion as an untitled portion of its Response. Accordingly, as Plaintiff's untitled motion for summary judgment was untimely, the Court need not reach the merits of the motion. It is denied.

**ORDERED** that Defendant Ricoh America's Corporation's Motion for Summary Judgment (Doc. 92) is **DENIED** as to Counts III and IV of the Amended Complaint (Doc. 2); and that Plaintiff's Motion for Summary Judgment (Doc. 95) is **DENIED** as to Counts III and IV of the Amended Complaint.

**DONE AND ORDERED** in Chambers, in Tampa, Florida, this 2nd of February, 2012.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.